**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

GREGG JEFFERY WARDELL,

                Petitioner,

vs.                            Case No.:     3:12-cv-689-J-32MCR

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

                Respondent.

_____/

## <u>ORDER</u>

### I.     Status

       Petitioner, an inmate of the Florida Department of Corrections who is proceeding pro se, is proceeding in this action on a Petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1, Petition).[1]  Petitioner challenges his 2004 state court (St. Johns County) conviction and sentence for trafficking Oxycontin and other narcotics[2], in violation of section 839.135(1)(c), Florida Statutes (2001).[3]  The court

---

[1]    References to docket entries in this civil § 2254 case will be denoted as "Doc. _____." The Court will refer to Respondents' exhibits (Doc. 8) as "Ex." Unless otherwise noted, the Court will cite the page number imprinted on the bottom center of each page of the pertinent exhibit, or if there is no page number on the bottom center of the page, the Court will cite the page number imprinted on the upper right corner of each page of the exhibit.

[2]    Petitioner was also charged and convicted in St. Johns County of violating probation.

[3]    The state court docket is available online at https://doris.clk.co.st-johns.fl.us/BenchmarkWeb/CourtCase.aspx/Details/6152?digest=4vX0VXalKlrl%2F8wB%2FbsJYg.  The state court case number is 02001208-CFMA.

sentenced Petitioner to thirty years imprisonment.  Petitioner raises five grounds for

relief.  Respondents have responded.  (See Doc. 6, Response).  Petitioner has replied.

(See Doc. 9, Reply).  Thus, this case is ripe for review.

## II.    Background

This habeas petition challenges Petitioner's St. Johns County, Florida

conviction and sentence for trafficking Oxycontin.  Less than two months before the

State charged him with that offense, the State also charged Petitioner with

burglarizing a pharmacy in Hillsborough County, Florida.  The Hillsborough County

case led to a competency proceeding that is also relevant to this case.  The Fifth

District Court of Appeal, which decided Petitioner's direct appeal from the St. Johns

County conviction, provided the following factual summary:

> Appellant was convicted of racketeering in St. Johns County in 1992. He
> was sentenced to four and one-half years in the Department of
> Corrections followed by twenty years probation. On April 22, 2002, an
> information was filed against appellant in Hillsborough County for
> burglary and related offenses. On May 15, 2002, an affidavit of violation
> of probation in the racketeering case was filed in St. Johns County. On
> June 7, 2002, appellant was charged with one count of trafficking in
> oxycotin in St. Johns County.
>
> The Hillsborough County case initially proceeded at a quicker pace than
> the cases in St. Johns County. An issue was raised in the Hillsborough
> County case as to appellant's mental competency to stand trial. The
> circuit court judge presiding over the Hillsborough County case, the
> Honorable Denise Pomponio, appointed two doctors to evaluate
> appellant. After evaluating appellant, both doctors concluded appellant
> was mentally incompetent to proceed, but that his competency was
> restorable. On March 30, 2003, Judge Pomponio entered an order
> committing appellant to the custody of the Department of Children and
> Families (DCF). Judge Pomponio specifically stated in the order:

> This Court retains jurisdiction in this cause, and the (appellant) shall not be discharged or released from the commitment within the Department of Children of Families without further order of this court.

Appellant was admitted to the South Florida Evaluation and Treatment Center on April 3, 2003.

On April 23, 2003, the state filed a motion for mental health examination in the St. Johns County cases. One week later, the circuit court judge in St. Johns County appointed two experts to conduct a competency evaluation of appellant. The trial judge also entered an order to transport appellant to St. Johns County. In his order, the circuit judge in St. Johns County recited that he had been advised by DCF, through a state hospital administrator, that appellant no longer met the criteria for continued commitment.[4]

Although the record suggests Judge Pomponio was subsequently made aware of the order to transport issued from St. Johns County, the record is devoid of any evidence that the state sought to obtain an order from Judge Pomponio authorizing appellant's release from DCF's custody.

Appellant was subsequently found competent to proceed in the St. Johns County cases. He was ultimately convicted and sentenced on both the trafficking in oxycotin case and his violation of probation charges.***

Wardell v. State, 944 So. 2d 1089, 1090-91 (Fla. 5th DCA 2006) ("Wardell I").

Both experts who evaluated Petitioner in the Hillsborough County case, Dr. Arturo Gonzalez, M.D., and Dr. Fred Farzanegan, Ph.D., found him incompetent to proceed,[5] although Dr. Farzanegan could not rule out the possibility of malingering. Dr. Farzanegan noted "[t]here is a possibility that [Petitioner] is malingering, and this can be determined when he is hospitalized and observed for a longer period of time." (Ex. S., Vol. I at 52).

---

[4]     (Ex. S, Vol. I at 30).
[5]     (See evaluation of Dr. Arturo Gonzalez, Ex. S, Vol. I at 46-48, and evaluation of Dr. Fred Farzanegan, id. at 50-52).

After Petitioner was transported to St. Johns County to face charges there, he was evaluated by a total of four experts.  The first two experts to evaluate Petitioner were Dr. Robert Olds, M.D., (see report at Ex. S, Vol. I at 67-71) and Dr. Jack Merwin, Ph.D. (see report at Ex. S, Vol. I at 73-74).  In a report dated May 15, 2003, Dr. Olds concluded that Petitioner may suffer from psychosis and appeared to be incompetent to stand trial.  However, Dr. Olds also stated that Petitioner may have had a factitious disorder, i.e., that Petitioner was making up the symptoms.  Dr. Olds noted two observations indicating Petitioner had a factitious disorder: (1) Petitioner's responses on the mental status exam were inconsistent with a diagnosis of psychosis, and (2) Petitioner had not responded to conventional anti-psychotic treatments.  Thus, like Dr. Farzanegan, Dr. Olds could not rule out the possibility that Petitioner was malingering.  Dr. Olds was also asked to evaluate Petitioner's sanity at the time of the offense, but he withheld opinion in that regard.

In a report dated May 19, 2003, Dr. Merwin found that (1) Petitioner was competent to proceed, (2) Petitioner had been malingering, and (3) Petitioner was not insane at the time of the offense.  Dr. Merwin wrote that Petitioner had failed to cooperate on the mental status exam and concluded he was purposefully malingering to delay prosecution.  Dr. Merwin also found that Petitioner was not insane at the time he was arrested in May 2002, when police found him to be in possession of over 500 pharmaceutical pills concealed in a plastic bag.  Dr. Merwin noted that a search of Petitioner's leased storage units revealed numerous firearms, handheld radios, and cell phones.  Dr. Merwin further observed that when Petitioner was arrested in

connection with robbing a pharmacy in Hillsborough County, police found him in possession of burglary tools.  Dr. Merwin did not explicitly state how these facts influenced the sanity determination, but presumably they reflected a degree of sophistication inconsistent with insanity at the time of the offense.  Dr. Merwin also partly based his report on a phone conversation with Petitioner's father, where the father stated Petitioner had no known history of treatment for substance abuse or mental health problems.

On October 27, 2003, a St. Johns County court judge appointed a third expert, Dr. Sherry Risch, Ph.D., to evaluate Petitioner.  (See Ex. S, Vol. I at 86-88).  Dr. Risch examined Petitioner, but like Dr. Merwin found him to be deliberately uncooperative. (See Dr. Risch's report at Ex. S, Vol. I at 76-77).  In a report dated December 14, 2003, Dr. Risch wrote that Petitioner refused to answer even basic questions, even though he had been conversing with the police officer about his dislike of the jail food during the car ride to her office.  Dr. Risch also stated that she called the jail nurse to talk about Petitioner, and the nurse informed her that Petitioner resided with the general population, where she was unaware of him exhibiting behavioral problems.  Dr. Risch concluded that Petitioner's refusal to cooperate was voluntary and unrelated to psychosis.  Accordingly, Dr. Risch withheld her opinion as to either Petitioner's competency or sanity at the time of the offense.

The St. Johns County circuit court held a competency hearing on January 12, 2004.  (See Ex. S, Vol. I at 101-05).  After reviewing the reports from Dr. Olds, Dr. Merwin, and Dr. Risch, the court concluded that Petitioner had been malingering and

purposefully refusing to cooperate.  The court asked the parties if they had any evidence to produce other than the three experts' reports.  (Id. at 104).  Defense counsel, perhaps unaware of the experts' reports in the Hillsborough County case, answered that he did not.  (Id.).  The State also had no other evidence to produce, and noted that there had been no indication of Petitioner conducting himself inappropriately or behaving bizarrely either in court or in jail.  (Id. at 104-05).  The court thus adjudicated Petitioner competent and set the case for trial.  (Id. at 105).

A few months later, however, and still before trial, defense counsel alerted the court to something he found in discovery: the reports of Dr. Gonzalez and Dr. Farzanegan from the Hillsborough County case that found him incompetent, and a Hillsborough County judge's order adjudging him so.  (See Ex. S, Vol. II at 198-208).  Trial counsel urged the court to appoint those two experts to evaluate Petitioner's competency and sanity at the time of the offense.  (Id. at 200-01).  Counsel argued that failing to allow those experts to evaluate Petitioner's competency and sanity would violate his Fifth and Sixth Amendment rights, and interfere with the effective assistance of counsel.  (Id. at 201).  The State responded that the Hillsborough County experts' findings were unrelated to the instant case, that Petitioner had already refused to cooperate with three other experts, and that Dr. Farzanegan himself had noted that Petitioner may have been malingering, just as the three St. Johns County experts had indicated.  (Id. at 202-03).  The court declined to appoint the two Hillsborough County experts, but nonetheless offered to appoint yet another expert.  (Id. at 205).  Counsel was unwavering that the Hillsborough County experts should

be appointed.  (Id. at 205-07).  In the end, the court decided to appoint Dr. Harry Krop, Ph.D., to evaluate Petitioner instead.  (Id. at 207-08).

Shortly thereafter, Dr. Krop evaluated Petitioner and generated a written report on October 20, 2004.  (See Ex. S, Vol. I at 80).  The report was inconclusive, and the record reflects that Petitioner once again refused to cooperate in the evaluation.  (See Ex. S, Vol. I at 15-16 (quoting Dr. Krop's report); Ex. S, Vol. II at 187; see also id. at 316).  Nevertheless, a few days before trial, counsel moved yet again for a fifth evaluation of Petitioner's competence.  (See id. at 187, 231).  The trial court denied the last request.

The same day that Dr. Krop generated his report, counsel wrote Petitioner to inform him that he had spoken to Dr. Farzanegan, one of the two Hillsborough County experts.  (Id. at 314-15).  Counsel wrote that based on his conversation with Dr. Farzanegan, neither he nor Dr. Gonzalez would be a favorable witness for Petitioner.  (Id. at 314).[6]  In light of this, counsel advised Petitioner that summoning

---

[6]     Counsel wrote in the letter to Petitioner that Dr. Farzanegan considered him restored to competency.  In fact, trial counsel himself told Dr. Farzanegan that Petitioner had been deemed competent (see Ex. S, Vol. III at 342). The letter gives the impression that Dr. Farzanegan personally made a competency determination, though that is not what happened.  Nevertheless, counsel did accurately inform Dr. Farzanegan that Petitioner had been deemed competent because that is what the St. Johns County court concluded nine months earlier, in January 2004.  Therefore, Dr. Farzanegan opined that unless he re-evaluated Petitioner, he could only testify as to Petitioner's competency at the time of his own examination in light of the court's later finding.  (Id.).

Apart from the foregoing, Dr. Farzanegan also stated that he did not think he would be a favorable witness for Petitioner because he had suspected that Petitioner was malingering.  (Id.).  Dr. Farzanegan's suspicion of malingering appears to be based on his own evaluation, rather than anything trial counsel told him.

either expert at trial would not benefit his defense. (Id. at 315). Counsel advised Petitioner to consider a plea offer from the State to serve 10 years in prison, rather than face a potential 30-year maximum sentence. (Id.). Counsel urged Petitioner to notify him whether he would accept the plea offer or proceed to trial.

Subsequently, Petitioner counter-offered to plead guilty in exchange for five-years imprisonment followed by five years probation, but the State rejected the offer. (See id. at 317). The case proceeded to trial, after which Petitioner was convicted and sentenced to thirty years in prison.

Petitioner appealed his conviction to the Fifth District Court of Appeal. In the briefs, Petitioner raised two issues: (1) that the St. Johns County circuit court lacked jurisdiction to convict and sentence him where another circuit court had adjudicated him incompetent, and (2) that the St. Johns County court erred by not allowing Dr. Farzanegan and Dr. Gonzalez to evaluate Petitioner's sanity at the time of the offense. (Ex. F; Ex. H). The appellate court rejected the arguments and affirmed his conviction and sentence in a written opinion. Wardell I, 944 So. 2d 1089; Ex. I.

Petitioner thereafter moved for post-conviction relief under Florida Rule of Criminal Procedure 3.850 (Ex. S, Vol. I at 1-19), alleging ineffective assistance of trial counsel, and petitioned the Fifth District Court of Appeal for a writ of habeas corpus (Ex. M), alleging ineffective assistance of appellate counsel. The trial court granted Petitioner an evidentiary hearing on a claim that trial counsel misadvised him with respect to the State's plea offer (see Ex. S, Vol. II at 296-99), but the state trial court eventually denied all relief (see id. at 184-89, 296-99). Likewise, the Fifth District

Court of Appeal denied the petition for writ of habeas corpus. (Ex. P). The Fifth District Court of Appeal also affirmed the trial court's denial of post-conviction relief. Wardell v. State, 88 So. 3d 959 (Fla. 5th DCA 2012) (per curiam) ("Wardell II"). This timely habeas petition follows.

## III.   Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir.2003), an evidentiary hearing will not be conducted.

## IV.   Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, 110 Stat. 1214 (hereinafter AEDPA)[7], this Court's review "is 'greatly

---

[7]     "[T]he highest state court decision reaching the merits of a habeas petitioner's claim is the relevant state court decision." Newland v. Hall, 527 F.3d 1162, 1199 (11th Cir.2008). Additionally, in Harrington v. Richter, —— U.S. ——, ——, 131 S.Ct. 770, 785 (2011), the United States Supreme Court held that § 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been

circumscribed and highly deferential to the state courts.'" <u>Stewart v. Sec'y, Dep't of Corr.</u>, 476 F.3d 1193, 1208 (11th Cir.2007) (citing <u>Crawford v. Head</u>, 311 F.3d 1288, 1295 (11th Cir. 2002)).

> Under AEDPA, when a state court has adjudicated the petitioner's claim on the merits, a federal court may not grant habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," <u>id.</u> § 2254(d)(2). A state court's factual findings are presumed correct unless rebutted by clear and convincing evidence.[8] <u>Id.</u> § 2254(e)(1); <u>Ferrell v. Hall</u>, 640 F.3d 1199, 1223 (11th Cir.2011).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." <u>Renico v. Lett</u>, 559 U.S. 766, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." <u>Harrington v. Richter</u>, —— U.S. ——, ——, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. <u>See</u>, <u>e.g.</u>, <u>Mitchell v. Esparza</u>, 540 U.S. 12, 18, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003); <u>Lockyer</u>, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); <u>Williams v. Taylor</u>, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("[A]n

---

'adjudicated on the merits.' " The Court explained, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Id.</u> at 784–785.

[8]   "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir.2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253–54 (11th Cir.2013).

## V.     Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, "[Petitioner] must meet both the deficient performance and prejudice prongs of Strickland."  Wong v. Belmontes, 558 U.S. 15, 16, 130 S.Ct. 383, 175 L.Ed.2d 328 (2009) (per curiam) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness."  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance.  The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding."  Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

Harrington v. Richter, —— U.S. ——, 131 S. Ct. 770, 787–88, 178 L.Ed.2d 624 (2011) (internal citations omitted).  Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir.2010) (citation omitted).

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> The question "is not whether a federal court believes the state court's determination" under the Strickland standard "was incorrect but whether that determination was unreasonable-a substantially higher threshold." Schriro, [550 U.S. at 473]. And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). Thus, the standards created by Strickland and § 2254(d) are both highly deferential, "and when the two apply in tandem, review is 'doubly' so[.]" Harrington, 131 S.Ct. at 788 (quoting Knowles, 556 U.S. at 123).

## VI.    Findings of Fact and Conclusions of Law

### A. Ground One

In Ground One, Petitioner alleges that counsel gave ineffective assistance by misadvising him concerning a plea offer. (Petition at 4-6). The State made Petitioner an offer whereby he would serve ten years in prison in exchange for pleading guilty (whether the State offered ten years as the final sentence or a mandatory minimum is unclear). Counsel notified Petitioner of the offer, but Petitioner alleges that counsel failed to inform him that (1) under Florida law, he would only have to serve eighty-five percent of a negotiated sentence (such that even if there was a ten year mandatory minimum, he would serve eight and a half years), and (2) the mandatory

minimum sentence for the charged offense was twenty-five years.  Petitioner alleges that he would have accepted the plea offer had he been aware of the eighty-five percent rule and the twenty-five year mandatory minimum.  Instead of accepting the State's original offer, Petitioner made a counter-offer to serve five years imprisonment and five years probation (see Ex. S, Vol. II at 303, 317), which the State rejected.  Petitioner proceeded to trial and wound up being sentenced to thirty years imprisonment.

Petitioner raised this issue before the state post-conviction court, but only with respect to counsel's failure to advise him of the eighty-five percent rule.  In his Rule 3.850 motion, Petitioner did not raise the issue with respect to counsel's failure to inform him of the twenty-five year mandatory minimum sentence.  (Ex. S, Vol. I at 18; see also Ex. S, Vol. IV at 523-26).  Rather, Petitioner attempted to incorporate the latter issue at the post-conviction evidentiary hearing.  (See Ex. S, Vol. IV at 523-26).  The state court ultimately rejected this claim following the evidentiary hearing, explaining as follows:

> In Ground Three, Defendant claims that the investigator working with his assigned public defender incorrectly conveyed to him a 10 year plea offer.  Defendant claims that the investigator expressed to him that he believed the Defendant would serve all of the ten years offered by the State.  Defendant argues that had trial counsel personally conveyed the ten year plea offer and explained that Defendant would only serve eight and a half years under the 85% law, Defendant would have accepted the plea.
>
> ***
>
> At the hearing, the Court heard testimony from David Newsome, an investigator with the Public Defender's Office in St. Johns County, Florida; James Jacobs, Esquire, Defendant's trial counsel; Tina Heinrich, Defendant's friend; and Defendant. The hearing was lengthy.

13

A majority involved the presentation of testimony and evidence irrelevant to the limited issue upon which the evidentiary hearing was granted. Accordingly, the court will only address the issue raised by Defendant in Ground Three of his Motion for Postconviction Relief, and the testimony and evidence relevant thereto.

Mr. Newsome testified that as an investigator with the Public Defender's office, he was asked to convey plea offers to defendants on a couple of occasions, and he did so in Defendant's case. According to Mr. Newsome, he met with the Defendant on at least two occasions. His notes reflect that he first met with the Defendant on August 23, 2004, at the request of Mr. Jacobs, to relay a plea offer to the Defendant. (See August 23, 2004, file note, attached hereto at Appendix A). Although Mr. Newsome does not remember Mr. Jacobs specifically instructing him about any minimum mandatory sentences, he does recall telling the Defendant that the State made a ten year offer, and the Defendant would only serve about eight years of the ten years.[9] Mr. Newsome also testified he informed Defendant that he was facing thirty years in prison if he did not accept the offer. According to Mr. Newsome, Defendant asked if the ten years was mandatory, and Mr. Newsome told him yes but he would get credit for good time and for time served. Mr. Newsome testified that he did not know what Defendant meant by mandatory at the time, but he does now. At the time he conveyed the offer, Mr. Newsome did not tell the Defendant that there was a minimum mandatory sentence. Mr. Newsome testified that after he relayed the offer, Defendant said he would need some time to think about it and told Mr. Newsome to get back with him.

Mr. Newsome also met with the Defendant on October 25, 2004. (See October 25, 2004, file note, attached hereto at Appendix B). On that date, Defendant said he did not want ten years, but he would take five years plus probation if he had that offer.[10] There was no discussion during that visit about a minimum mandatory sentence.[11] After conveying his counteroffer, Defendant told Mr. Newsome that he did not need them, meaning his attorney and Mr. Newsome, to do anything else in his case. Mr. Newsome testified that he relayed the five year counter offer the Defendant made to Mr. Jacobs.

Mr. Jacobs testified that the Defendant refused to cooperate with him, the court, and his court appointed doctors, and because of his refusal to

---

9    Ex. S, Vol. IV at 455.
10   Ex. S, Vol. IV at 458.
11   Id. at 456.

cooperate, Mr. Jacobs had to try to communicate with the Defendant through letters.[12] Mr. Jacobs sent several letters to the Defendant regarding offers made by the State and the status of the case, and those letters were entered into evidence at the hearing. (See letters attached hereto at Appendix C).[13] The Defendant refused to respond to the letters or otherwise communicate with Mr. Jacobs.

Defendant testified that he and his attorney never discussed the ten year plea offer.[14] Defendant admitted that he did not cooperate with his attorney and he testified that he refused to talk to Mr. Newsome about his case.[15] Defendant also testified that he never asked Mr. Newsome about gain time or credit for time served, and that this was never discussed. Defendant testified that he came away from the meeting with Mr. Newsome on August 23, 2004, thinking he would serve a full ten years if he took the ten year plea offer.[16] Defendant testified that he never declined the ten year offer, however, Mr. Jacobs testified that he clearly declined the ten year offer when he made a counter-offer to the State.

Defendant has failed to meet the requirements for a claim of ineffective assistance of counsel under Strickland. The Court finds Mr. Newsome's testimony regarding his conveyance of the plea offer credible. Mr. Newsome told Defendant that he would probably serve only about eight years of the ten years offered by the State. It is clear from the testimony and evidence that Defendant had independent knowledge of the "85% law," and Mr. Newsome informed Defendant the he would serve only about eight years if he took the offer made by the State. Defendant refused to communicate with his attorney and with his attorney's investigator, making it very difficult for Mr. Jacobs to convey information and receive input from the Defendant regarding his case.

Even if Mr. Newsome had failed to convey information regarding the plea offer, Defendant failed to offer any proof regarding the plea offer made by the State. There is no evidence that Defendant would, in fact be eligible for gain time under the terms of the plea offer. Furthermore, Defendant's claim that he would have accepted the plea offer had he known he would only serve 85% of the ten years offered is incredible. Defendant was facing a maximum of thirty years in prison if he

---

12      Id. at 475; see also id. at 506-09.
13      Ex. S, Vol. II at 304-17.
14      Ex. S, Vol. IV at 530, 532.
15      Ex. S, Vol. IV at 522, 528-29.
16      Id. at 527.

> proceeded to trial and was convicted. Given the disparity in the length of time offered and the length of time Defendant was facing, it is incredible for Defendant to claim that he would have accepted a plea offer of ten years if he knew there was a possibility that he would serve only 85% of the ten years. Additionally, it is clear from the testimony that Defendant was not willing to accept anything more than five years in prison followed by probation.[17]

(Ex. S, Vol. II at 297-99) (emphasis in original).

The Fifth District Court of Appeal affirmed the denial of post-conviction relief without a written opinion. Wardell II, 88 So. 3d 959.

A defendant's right to the effective assistance of counsel extends "to the negotiation and consideration of plea offers that lapse or are rejected." In re Perez, 682 F.3d 930, 932 (11th Cir. 2012) (per curiam). See also Lafler v. Cooper, 132 S. Ct. 1376 (2012); Missouri v. Frye, 132 S. Ct. 1399 (2012). As with other ineffective assistance claims, Strickland's two-part deficiency-and-prejudice inquiry applies to claims that counsel gave ineffective assistance during the plea process. Osley v. United States, 751 F.3d 1214, 1222 (11th Cir. 2014) (citing Hill v. Lockhart, 474 U.S. 52, 57 (1985)). In order for a defendant to establish prejudice,

> a defendant must show a reasonable probability that but for counsel's ineffectiveness: (1) "the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)"; (2) "the court would have accepted its terms"; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler, 132 S.Ct. at 1385; see Frye, 132 S.Ct. at 1409.

Osley, 751 F.3d at 1222.

---

17      In addition to making a five-year counter offer, at another point, Petitioner testified that he counter-offered to serve only three years. (Id. at 532-33).

With respect to Petitioner's claim that counsel failed to inform him of the "eighty-five percent rule," this Court assumes for the sake of discussion that counsel did not personally advise Petitioner that he would only serve eighty-five percent of his sentence.   Nevertheless, the state court did not unreasonably conclude that Petitioner was not prejudiced.   Petitioner fails the first prong of <u>Lafler</u>'s prejudice analysis.   There was competent evidence before the state post-conviction court that Petitioner had independent knowledge of the eighty-five percent rule, specifically, that Mr. Newsome (the investigator from the Public Defender's Office who conveyed the plea offer as counsel's representative) had advised Petitioner that he would only serve about eight years of the State's proposed ten year sentence.   (<u>See</u> Ex. S, Vol. II at 299; Ex. S, Vol. IV at 455).   Even with that information, Petitioner still rejected the plea offer by countering to do five years in prison and five years on probation. Accordingly, the state court's adjudication of this claim was reasonable.

Petitioner also claims that counsel failed to inform him of the twenty-five year mandatory minimum.   The communication between counsel and Petitioner regarding plea offers was not ideal.   Petitioner apparently rejected several efforts by his counsel to communicate with him regarding his case and plea negotiations.   Several letters from counsel to Petitioner document that Petitioner refused to communicate with his counsel even when counsel urged him to do so.   (<u>See</u> Ex. S, Vol. II at 304-17; Ex. S, Vol. III at 340).[18]   Perhaps because of this impediment, counsel used his investigator

---

[18]   Petitioner also testified that he declined to communicate with his counsel.   (Ex. S, Vol. IV at 522).

to communicate the ten year plea offer to Petitioner.  There is no concrete evidence that counsel or the investigator ever conveyed that Petitioner was facing a twenty-five year mandatory minimum sentence but the investigator did advise that Petitioner was facing a possible thirty year sentence.  (See Ex. S, Vol. II at 301).  At some point Petitioner made a five year counteroffer, apparently rejecting the ten year offer.  The State rejected Petitioner's counteroffer and the parties proceeded to trial, resulting in Petitioner's conviction.   At sentencing, there was discussion of the twenty-five year mandatory minimum and the Court sentenced Petitioner to thirty years.  Given the opportunity to allocute (or presumably say something if he was surprised by the discussion of the twenty-five year mandatory minimum), Petitioner stood mute.  (See Ex. A, Vol. III at 371-98, March 4, 2015 sentencing transcript).

When Petitioner filed his pro se post-conviction motion, he did not mention the twenty-five year minimum mandatory, but alleged only counsel's failure to advise him of the "eighty-five percent rule."  (Ex. S, Vol. I at 18).  However, by the time of the evidentiary hearing, Petitioner had counsel who raised and focused on the issue of trial counsel's failure to advise of the twenty-five year mandatory minimum.  (See Ex. S. Vol. IV at 467-80, 489-500, 521-26; see also Ex. S, Vol. III at 318-38, Motion for Reconsideration).  The trial judge at several points said she would not consider that issue because it was not previously raised (Ex. S, Vol. IV at 523-26), though she did allow testimony regarding it (id. at 467-80, 489-500, 510, 521-23).  In her order denying post-conviction relief, the judge alluded to the mandatory minimum issue when she stated that "[a] majority [of the hearing] involved the presentation of

testimony and evidence irrelevant to the limited issue upon which the evidentiary hearing was granted." (Ex. S, Vol. II at 297).   Petitioner's counsel then filed an extensive motion for rehearing focusing on the mandatory minimum issue (Ex. S, Vol. III at 318-38), but the trial judge found the motion for rehearing moot because Petitioner's counsel also filed a notice of appeal (Id. at 438-41).   On appeal it appears that the appellate court allowed supplemental briefing on the mandatory minimum issue (Ex. U; Ex. W), but eventually affirmed without a written opinion.   (Ex. Z).[19]

Thus there are qualifying decisions from the state circuit court and court of appeal.   AEDPA demands that this Court give deference to state courts' decisions. Bishop, 726 F.3d at 1253–54 (internal citations omitted).   This Court's task is only to determine whether the state courts' adjudication of this claim was contrary to clearly established federal law, an unreasonable application thereof, or based on an unreasonable determination of the facts.   28 U.S.C. § 2254(d).

---

[19]   In doing so, the appellate court may have agreed with the State's analysis that the mandatory minimum issue was untimely raised because Petitioner did not assert it until the evidentiary hearing in February 2010, which was more than two years after his conviction and sentence became final.   (See Ex. X at 7-8) (citing Himes v. State, 53 So. 3d 1218, 1218 (Fla. 1st DCA 2011) ("A defendant may amend a timely filed rule 3.850 motion as long as the amended motion is also within the two-year rule 3.850 filing window")); see also Fla. R. Crim. P. 3.850(b) (setting a two-year statute of limitations for moving for post-conviction relief).   The appellate court might also have affirmed on the merits.   This Court is inclined to presume that the appellate court found the claim procedurally barred, Tower v. Phillips, 7 F.3d 206, 211 (11th Cir. 1993) ("[T]he most reasonable assumption is that had the state court ruled, it would have enforced the procedural bar."), resulting in this claim being barred from habeas review as well, see Whiddon v. Dugger., 894 F.2d 1266, 1267-68 (11th Cir. 1990) (failing to comply with two-year time limit contained in Fla. R. Crim. P. 3.850(b) may operate to bar habeas relief).

The Court has considered this issue carefully and has read the entire transcript of the post-conviction hearing, all the relevant orders and the documentation of communications between Petitioner's trial counsel, trial investigator, and Petitioner.  This Court has concern as to whether, in deciding whether to accept the state's ten year plea offer, counsel advised Petitioner of a twenty-five year minimum mandatory applicable to his case if he did not accept the State's offer.  At the post-conviction hearing, Petitioner's trial counsel testified, but could not remember very much and the documentation was incomplete.  Trial counsel did testify that he did not recall any discussion of a twenty-five year mandatory minimum and disclaimed the applicability of one because he said the state would not have made a ten year plea offer in a case involving a twenty-five year minimum sentence.  (Ex. S, Vol. IV at 492-93, 496-97).  We know, however, from the sentencing transcript, that the Court did apply a twenty-five year mandatory minimum to Petitioner's case and then sentenced him to thirty years.  (See Ex. A, Vol. III at 371-98).

It is unclear why the state would have been making a plea offer that was less than the mandatory minimum sentence.  One possibility is that the plea offer was to a lesser included offense or another offense that did not have the minimum mandatory.  Another possibility is that the prosecutor unwittingly offered to allow Petitioner to plead guilty to the charged offense and receive a sentence below the mandatory minimum, as happened in Osley v. United States, 751 F.3d 1214, supra.  We just don't know.

What we do know is that Petitioner refused to communicate with his counsel, and that Petitioner himself did not raise the twenty-five year mandatory minimum issue in his post-conviction motion when he was acting pro se. Thus, it appears that Petitioner procedurally defaulted the mandatory minimum issue when he failed to timely raise it in state court. (See p. 19 n.18, supra). We also know that Petitioner's post-conviction counsel could not find any written record of the plea offer and chose not to call the assistant state attorney to try to determine the basis upon which the state would have been offering a ten year plea deal in a case requiring a twenty-five year mandatory minimum sentence. There is also every indication that this Petitioner was not interested in the ten year plea deal regardless of the circumstances. Therefore, if the Fifth District Court of Appeal affirmed the denial of post-conviction relief on the merits, Petitioner has not overcome AEDPA's exceedingly deferential standard to demonstrate that the decision was objectively unreasonable. Thus, while this Court would have preferred a better developed record on this issue, given the substantial deference owed to the state court as well as the high standards for proving an ineffective assistance of counsel claim in any event, Knowles, 556 U.S. at 123 (the combination of AEDPA deference and Strickland deference results in a doubly deferential standard of review), this Court will deny relief based on Ground One. However, the Court will grant a certificate of appealability.

**B. Ground Two**

In Ground Two, Petitioner claims that counsel gave ineffective assistance by failing to ensure that he was competent to stand trial in St. Johns County. (Petition at 6-13). Specifically, Petitioner claims that he was prejudiced by counsel's failure to: (a) object to the lack of a report from the Department of Children and Families (DCF) authorizing his release from a mental health treatment center, (b) object to Petitioner's removal from the judicial circuit where he had been adjudged incompetent to another judicial circuit (in St. Johns County) "based on a false court order," (c) "ensure a fixed date and timely competency hearing," (d) investigate available mental health reports and call experts to testify at the St. Johns County competency hearing, (e) object to the court's reliance on written reports at the competency hearing, and (f) object to the use of months-old reports "that could not reflect Petitioner's 'present ability' to consult with counsel." (Id. at 6).

Petitioner raised this ground in his Rule 3.850 motion (see Ex. S, Vol. I at 1-14), which the state court rejected:

> In Ground I, Defendant claims that Trial Counsel rendered ineffective assistance by failing to protect his due process rights to not be tried while incompetent pursuant to Dusky v. United States, 362 U.S. 402, 80 S. Ct. 788, 4 L.Ed.2d 824 (1960). This Court finds that the record conclusively refutes Defendant's claim. On January 12, 2004, a competency hearing was held, and the trial court, after reviewing reports from three mental health experts, determined that Defendant was competent to proceed. (See Competency Hearing Transcript, attached hereto as Appendix A).[20] "Once a defendant is determined competent to stand trial, a presumption of competence attaches to the defendant in later proceedings." Pickles v. State, 976 So.2d 690, 693 (Fla. 4th DCA 2008), citing Boyd v. State, 910 So.2d 167, 187 (Fla. 2005).

---

[20]     Ex. S, Vol. II at 190-96.

On direct appeal, Defendant contested the Trial Court's ruling that he was competent to proceed and is now procedurally barred from re-litigating the issue.

After the Court first determined that Defendant was competent to proceed, Trial Counsel petitioned the Court to allow Defendant to be examined again by the mental health experts from Hillsborough County whose reports resulted in Defendant's previous adjudication of incompetency in the Hillsborough County case, and the motion was denied. (See Renewed Motion for Competency Evaluation Transcript, attached hereto as Appendix B, pp. 3-8).[21] At the hearing on the motion, the Trial Court pointed out that the experts from Hillsborough County had been unable to determine whether Defendant was incompetent or was malingering during their mental status evaluations and that Defendant was committed to the State Hospital by the Hillsborough Court to make that determination. (See Appendix B, pp. 7-8).[22] As noted above, Defendant challenged the Court's decision on direct appeal and is procedurally barred from contesting the issue. (See Appellant's Reply Brief, attached hereto as Appendix C).[23] In an abundance of caution the Trial Court appointed Dr. Harry Krop as a fourth mental health expert to re-evaluate Defendant. (See Appendix B, pp. 8-11).[24] However, Defendant failed to cooperate with the examination that was requested by Trial Counsel. (See Trial Transcript, attached hereto as Appendix D, pp. 216-18[25] and Defendant's Rule 3.850 Motion pp. 15-16[26]). Furthermore, Trial Counsel asked the Court to appoint an expert witness to evaluate Defendant on November 29, 2004, a few days before trial. The Court denied the request on the basis that Defendant had been examined several times and the experts had found that Defendant was malingering. (See 11/29/04 Hearing Transcript, attached hereto as Appendix E, p. 29).[27] As the State noted, Trial Counsel took extraordinary measures to protect Defendant's rights. Accordingly, Ground I is summarily denied.

---

[21]     Ex. S, Vol. II at 200-05.  In this hearing, trial counsel also brought it to the court's attention that two experts had found Petitioner incompetent in connection with the Hillsborough County case, and that the judge there had adjudged Petitioner incompetent.

[22]     Id. at 204-05.

[23]     Id. at 210-25.

[24]     Id. at 205-08.

[25]     Id. at 227-29.

[26]     Ex. S, Vol. I at 15-16.

[27]     Ex. S, Vol. II at 231.

(Ex. S, Vol. II at 186-87).  Petitioner appealed the denial of post-conviction relief, and

the appellate court affirmed without a written opinion.  Wardell II, 88 So. 3d 959.

As the post-conviction court noted, Petitioner challenged on direct appeal the

St. Johns County court's decision to proceed to trial where he had previously been

adjudged incompetent in Hillsborough County.   Petitioner's appellate briefs show

that counsel argued that the St. Johns County court lacked jurisdiction to convict and

sentence him – under Florida law – because another circuit court had found him

incompetent but had not authorized his release from care.  (See Ex. F).  The Fifth

District Court of Appeal rejected that claim, first noting that Florida law provides:

> The committing court shall retain jurisdiction in the case of any
> defendant hospitalized as incompetent to proceed or because of a finding
> of not guilty by reason of insanity pursuant to this chapter. No such
> defendant may be released except by order of the committing court. The
> administrative hearing examiner shall have no jurisdiction to determine
> issues of continuing hospitalization or release of any defendant admitted
> pursuant to this chapter.

Wardell I, 944 So. 2d at 1091 (quoting Fla. Stat. § 916.16(1) (2001)).  The appellate

court then explained:

> On appeal, appellant contends the trial court did not have jurisdiction
> because the state failed to obtain an order from the committing court
> (Judge Pomponio) authorizing the release of appellant from the custody
> of DCF. Although this issue was never raised with the trial court,
> appellant correctly notes a court's lack of subject matter jurisdiction can
> be raised at any time. J.D. v. State, 849 So.2d 458 (Fla. 4th DCA 2003).
>
> While we agree the state failed to comply with section 916.16(1), we
> reject appellant's argument that the trial court lacked jurisdiction.
> Subject matter jurisdiction refers to the authority of the court to hear
> the class of cases to which the particular controversy belongs. Dep't of
> Revenue v. Pelsey, 779 So.2d 629, 631 (Fla. 1st DCA 2001). We find
> section 916.16(1) did not divest the trial court of its authority to preside
> over a felony case arising in St. Johns County. The statute does not

> expressly state the committing court's jurisdiction over a defendant found incompetent to proceed is <u>exclusive</u>. In Florida, circuit courts are tribunals of plenary jurisdiction having authority over any matter not expressly denied them by the Constitution or applicable statutes. <u>Dep't of Rev. v. Kuhnlein</u>, 646 So.2d 717, 720 (Fla.1994). Furthermore, the manner by which a criminal defendant is brought before a court, even if improper, does not divest a court of subject matter jurisdiction. <u>See</u> <u>Remeta v. Dugger</u>, 622 So.2d 452 (Fla.1993); <u>Jones v. State</u>, 386 So.2d 804 (Fla. 1st DCA 1980); <u>Hunter v. State</u>, 174 So.2d 415 (Fla. 3d DCA 1965).

<u>Wardell I</u>, 944 So. 2d at 1091.

Thus, there are qualifying decisions under AEDPA from the state courts. Upon thorough review of the law and the record, the Court finds that the state courts' adjudication of this claim was not contrary to clearly established federal law, an objectively unreasonable application thereof, or based on an unreasonable determination of the facts.

**(1) State law issues**

With respect to the first two subparts of Ground II, i.e., that counsel was ineffective for failing to (a) object to the absence of a DCF report or order authorizing Petitioner's release from commitment, or (b) object to Petitioner's removal to St. Johns County from the judicial circuit where he was adjudged incompetent, the post-conviction court did not unreasonably deny relief.   The first two subparts are essentially claims that counsel was ineffective for failing to ensure that the state courts followed proper <u>state</u> law procedures.  On direct appeal, the appellate court explained that under Florida Statutes Section 916.16(1), the adjudication of incompetency and order of commitment in Hillsborough County did not strip the circuit court in St. Johns County of jurisdiction to convict and sentence Petitioner.

Wardell I, 949 So. 2d at 1091.  Thus, according to the Fifth District Court of Appeal's interpretation of Florida law, Petitioner could still face charges in St. Johns County despite the absence of a DCF report or an order from Judge Pomponio authorizing his release.[28]  Therefore, Petitioner was not prejudiced by counsel's failure to object to his removal to St. Johns County without a DCF report or court order authorizing his release from treatment, because the St. Johns County court still had jurisdiction to try Petitioner and examine his competency for itself.  Given the state court's interpretation of state law, there is not a reasonable probability that counsel would have prevented Petitioner's prosecution in St. Johns County even had counsel objected to the method of his removal.

### (2) Due process incompetency issues

The remaining subparts of Ground II concern whether counsel failed to ensure that Petitioner had an adequate hearing before the St. Johns County court to determine his competency under Dusky v. United States, 362 U.S. 402 (1960)[29], and

---

[28]    A federal habeas court is bound by a state court's interpretation of state law. E.g., Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (Ohio transferred intent doctrine); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) (California rules of evidence); accord Herring v. Sec'y, Dep't of Corrs., 397 F.3d 1338, 1354–55 (11th Cir.2005) (Florida rules of evidence).

[29]    Dusky holds that it is a violation of substantive due process to try a defendant while he is actually mentally incompetent. James v. Singletary, 957 F.2d 1562, 1569 (11th Cir. 1992).  To be competent to stand trial, a petitioner must (1) have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and (2) have a rational as well as factual understanding of the proceedings against him. Dusky, 362 U.S. at 402; United States v. Rahim, 431 F.3d 753, 759 (11th Cir. 2005).

Pate v. Robinson, 383 U.S. 375 (1966)[30].   Petitioner asserts that counsel was
ineffective for failing to: (c) "ensure a fixed date and timely competency hearing," (d)
investigate available mental health reports and call experts to testify, (e) object to the
court's reliance on written reports at the competency hearing,[31] and (f) object to the
use of months-old reports "that could not reflect Petitioner's 'present ability' to
consult with counsel."  (Petition at 6).

The record reflects that the St. Johns County court appointed three experts to
evaluate Petitioner's competency before holding its own competency hearing on
January 12, 2004.  (See Ex. S, Vol. I at 101-05).  Dr. Olds reported that Petitioner
appeared incompetent, but he also reported that Petitioner might have had a
factitious disorder instead, explaining that his responses on the mental status exam
were inconsistent with a diagnosis of psychosis.  (Id. at 67-71).  Dr. Merwin reported
that Petitioner was competent to proceed and that he was malingering in order to
delay prosecution.  (Id. at 73-74).  Dr. Risch withheld her opinion as to Petitioner's
competency, but wrote that he was uncooperative, and that his lack of cooperation

---

[30]   Pate holds that it is a violation of procedural due process for a court not to
conduct a competency hearing where there is reason to question the defendant's
competence. A court has an obligation to conduct a competency hearing, even if not
requested to do so, if there is reasonable cause to believe a defendant may be suffering
from a mental defect that renders him unable to understand the nature and
consequences of the proceedings against him or to assist in his defense.  Pate, 383
U.S. at 385.  Therefore, a trial judge must conduct a sua sponte competency hearing
if there is evidence which raises a "bona fide doubt" about the defendant's competence
to stand trial.  Pardo v. Sec'y, Fla. Dep't of Corrections, 587 F.3d 1093, 1099–1100
(11th Cir.2009).
[31]   Subclaims (d) and (e) are restatements of each other, because the absence of
live testimony necessarily meant that the court had to rely on written reports.

was intentional and unrelated to psychosis. (<u>Id.</u> at 76-77). Based on these reports, the trial court determined that Petitioner was malingering and adjudicated him competent to proceed to trial. Thus, the record refutes the claim that counsel failed to ensure a timely hearing.

However, this Court admits concern about the adequacy of counsel's investigation for the January 2004 hearing, which only involved the court reviewing three competency reports, did not involve any live testimony, and consumed all of three transcript pages. Specifically, the court asked counsel whether he had any evidence of incompetency other than the reports of Dr. Olds, Dr. Merwin, and Dr. Risch, and counsel responded "no." (Ex. S, Vol. I at 104). Counsel was evidently unaware of the reports of Dr. Gonzalez and Dr. Farzanegan from the Hillsborough County case, where Petitioner was found incompetent.

However, in June 2004 – still before trial – counsel learned of the reports of Dr. Gonzalez and Dr. Farzanegan, as well as the judge's order in the Hillsborough County case adjudicating Petitioner incompetent. (<u>See</u> Ex. A, Vol. VII at 460-65; Ex. S, Vol. II at 198-208). Trial counsel alerted the St. Johns County court to the information and urged it to appoint Drs. Gonzalez and Farzanegan to evaluate Petitioner's competency and sanity at the time of the offense. (Ex. A, Vol. VII at 460-65; Ex. S, Vol. II at 198-208). The court denied the motion but appointed a fourth expert, Dr. Krop, to evaluate Petitioner. (<u>See</u> Ex. S, Vol. II at 207-08). Counsel was unwavering that the court should appoint Drs. Gonzalez and Farzanegan to evaluate Petitioner, but counsel accepted the appointment of Dr. Krop.

Rather than cooperate with Dr. Krop, however, Petitioner chose not to meaningfully participate in this competency evaluation.  (See Ex. S, Vol. I at 15-16 (quoting Dr. Krop's competency report); Ex. S, Vol. II at 187, 313-15).  In fact, Petitioner immediately determined that he would not cooperate with Dr. Krop because he believed Dr. Krop had a pro-prosecution bias.  (See id. at 313-15).  Such behavior would be consistent with Petitioner's testimony at the post-conviction evidentiary hearing, where he testified that he likewise refused to cooperate with his attorney (Ex. S, Vol. IV at 522), and the investigator from the public defender's office (id. at 528-29, 531).  Accordingly, Dr. Krop's report was inconclusive as to Petitioner's competency or sanity at the time of the offense, though he noted that Petitioner was disobliging.  Despite Petitioner's refusal to cooperate in this and several other competency evaluations, counsel still moved for a fifth evaluation on the eve of trial, though the trial court rejected that motion.  (See Ex. S, Vol. II at 187, 231).

Additionally, the record reflects that after counsel learned about the reports of Drs. Gonzalez and Farzanegan, counsel contacted Dr. Farzanegan about testifying in Petitioner's case.  However, it turns out Dr. Farzanegan would not have been a favorable witness for Petitioner.  In a letter to counsel, Dr. Farzanegan wrote that he "suspected strongly that [Petitioner] might be malingering."  (Ex. S, Vol. III at 342). Dr. Farzanegan informed counsel:

> I see no purpose in my coming to St. Augustine and testifying as to his competency at this time.  In fact, my testimony would more likely hurt his case rather than help it, as I suspected that he may have been malingering, and more likely than not, other evaluators have suspected the same.

(Id.).  Indeed, three other evaluators, Drs. Olds, Merwin, and Risch, did suspect the same.  (See Ex. S, Vol. I at 67-71, 73-74, 76-77).  Even though counsel failed to call Dr. Farzanegan at the January 2004 competency hearing, that failure did not prejudice Petitioner because Dr. Farzanegan's testimony would have been unfavorable.[32]

Therefore, the record confirms the state post-conviction court's conclusion that "Trial Counsel took extraordinary measures to protect Defendant's right[ ]" to be competent to stand trial.  (Ex. S, Vol. II at 187).  Following the January 12, 2004 competency hearing, counsel argued several times for additional competency evaluations in light of the reports of Drs. Farzanegan and Gonzalez.  The court declined to appoint those two experts and Petitioner refused to cooperate with those who were appointed.  Moreover, Petitioner has not shown a reasonable probability that the court would have found him incompetent had counsel summoned witnesses to the January 2004 competency hearing.  All three experts whose written reports were before the court in January 2004 – those of Drs. Olds, Merwin, and Risch – indicated that Petitioner was malingering.  Even if counsel had called Dr. Farzanegan to that hearing, his testimony would have been similarly unfavorable as he had also

---

[32]     The record is less clear whether Dr. Gonzalez, like Dr. Farzanegan, would also have been an unfavorable witness for Petitioner in light of the St. Johns County court's later finding of competency.  Even if he would have been favorable, his testimony would have been based on a competency determination that was outdated compared to those of Drs. Olds, Merwin, and Risch, which indicated Petitioner was malingering.  Thus, the more up-to-date findings of three experts almost certainly would have outweighed the testimony of Dr. Gonzalez, and thus there is not a reasonable likelihood that his testimony would have caused the St. Johns County court to find Petitioner competent.

"suspected strongly" that Petitioner was malingering.  (See Ex. S, Vol. III at 342). Insofar as Petitioner alleges that counsel should have called any other witnesses[33] to the January 2004 competency hearing, the burden of demonstrating prejudice is heavy because "often allegations of what a witness would have testified to are largely speculative." Sullivan v. DeLoach, 459 F.3d 1097, 1109 (11th Cir. 2006) (citing United States v. Guerra, 628 F.2d 410, 413 (5th Cir. 1980)).  The weight of expert opinion was that Petitioner was malingering, considering that five court-appointed experts – Dr. Farzanegan, Dr. Olds, Dr. Merwin, Dr. Risch, and later, Dr. Krop – concluded or suspected that Petitioner was faking symptoms of incompetency or deliberately refusing to cooperate.  As such, Petitioner has not shown a reasonable probability that further investigation by counsel would have caused the court in St. Johns County to find him incompetent.

Petitioner's contention that counsel was ineffective for not objecting to the state court's reliance on months-old reports, which allegedly "could not reflect Petitioner's 'present ability' to consult with counsel" (Petition at 13), also lacks merit. Petitioner essentially contends that counsel was ineffective for allowing the court to make its January 2004 competency determination based on reports generated by Drs. Olds, Merwin, and Risch between May and October 2003.  However, those three

---

[33]     Petitioner also alleges that counsel should have summoned Dr. Sergio Arcey, M.D., or Dr. Carol Delaney, Psy.D., RN.  (See Ex. S, Vol. I at 54-58, 62-65).  Although Dr. Arcey diagnosed Petitioner with psychosis "not-otherwise-specified," he did not opine as to Petitioner's competency to stand trial, so his testimony would not have been informative on the issue.  (See id. at 54-58).  Dr. Delaney opined that Petitioner was incompetent (see id. at 62-65), but her report was outdated compared to the competency reports prepared in connection with the St. Johns County case.

competency reports were the most up-to-date evidence on Petitioner's competence at the time of the hearing.  In order for Petitioner to have been prejudiced by the court's reliance on "outdated" reports generated between May 2003 and October 2003, he would have to point to new evidence of incompetence that emerged between October 2003 and the January 2004 competency hearing that was not presented to the court.  The only evidence of incompetence to which Petitioner points are the two reports made in connection with the Hillsborough County case.  However, as the state court noted, those reports were even older than the reports generated by Dr. Olds, Dr. Merwin, and Dr. Risch that indicated Petitioner was malingering.  (See Ex. A, Vol. VII at 460-65).  Thus, Petitioner cannot complain about the court's reliance on months-old reports by claiming counsel should have introduced reports that were even older.  Moreover, Petitioner's claim ignores that counsel did move for new competency evaluations up until the eve of trial (see Ex. S, Vol. II at 186-87, 231), but either Petitioner refused to cooperate or the court denied the requests (id. at 186-187).

Accordingly, Petitioner has failed to show either deficient performance or prejudice from counsel's representation as it related to his competency.  The state courts' decision to deny relief on this Ground was not contrary to clearly established federal law, did not involve an unreasonable application thereof, and was not based on an unreasonable determination of the facts.  Accordingly, Petitioner is not entitled to relief.  However, the Court will grant a certificate of appealability.

## C. Ground Three

In Ground Three, Petitioner alleges that counsel rendered ineffective assistance by not seeking to have an additional expert evaluate his competency after Dr. Krop examined him in October 2004. (Petition at 14). Petitioner states that the version of Florida Rule of Criminal Procedure 3.210 in effect at the time his case was pending required that a Petitioner's competency be evaluated by at least two experts, and that counsel was ineffective for failing to ensure a second competency evaluation. Petitioner raised this issue in his Rule 3.850 motion (see Ex. S, Vol. I at 14-17), and the state court rejected it, explaining as follows:

> In Ground II, Defendant asserts that Trial Counsel rendered ineffective assistance by failing to request that the Trial Court order that he be examined by a fifth mental status expert and by failing to ask for the Court to hold another competency hearing after Defendant refused to cooperate with Dr. Krop's attempt to re-evaluate him pursuant to his September 2004 request. This Court finds that the record conclusively refutes Defendant's claim. Trial Counsel did in fact request that another expert be appointed to examine Defendant, and the Court denied his request. As noted above in Ground I, the Court found that Defendant had already been examined several times and was malingering and trying to avoid trial. (See Appendix E).[34] Defendant challenged the Court's ruling that he was competent to proceed on direct appeal and is now procedurally barred from re-litigating the issue.
>
> In addition, the trial court did not find that Defendant's mental status changed after it found him to be competent to stand trial or that there was reason to believe that he may be incompetent to proceed at the hearing. The Trial Court ordered Trial Counsel to prepare an order appointing Dr. Krop to assess Defendant's sanity at the time of the crime, a potentially exculpatory matter that Defendant could have presented at trial as opposed to a matter relating to his competency to proceed. (See Appendix B, pp. 7-11).[35] As such, this Court finds that Ground II is summarily denied.

---

34    Ex. S, Vol. II at 230-31.
35    Ex. S, Vol. II at 204-08.

(Ex. S, Vol. II at 188).

The Fifth District Court of Appeal affirmed without a written opinion. <u>Wardell II</u>, 88 So. 3d 959.  Thus, there are qualifying decisions under AEDPA from the state courts.  Upon a thorough review of the law and the record, the Court concludes that the state courts' adjudication of this claim was not contrary to clearly established federal law, an unreasonable application thereof, or based on an unreasonable determination of the facts.  Petitioner challenges counsel's performance for not requesting a further competency evaluation, but the record reflects that counsel did move the state court for an additional examination following Dr. Krop's assessment. (<u>See</u> Ex. S, Vol. II at 187, 231).  Additionally, a total of <u>four</u> experts – Dr. Olds, Dr. Merwin, Dr. Risch, and Dr. Krop – evaluated Petitioner's competency in the St. Johns County case, so it does not appear that counsel allowed a deviation from former Rule 3.210's two-expert requirement.[36] Moreover, the record reflects that after he met with Dr. Krop in October 2004, Petitioner informed his defense team that he did <u>not</u> want any further doctor's evaluations.  (Ex. S, Vol. II at 303).  Accordingly, Petitioner is not entitled to relief on this ground.

### D. Ground Four

In Ground Four, Petitioner argues that appellate counsel gave ineffective assistance by failing to raise essentially the same issues addressed in Ground II of

---

[36]     The current version of Fla. R. Crim. P. 3.210 contains no requirement that at least two experts evaluate a defendant's competence.

the instant habeas petition.  (<u>See</u> Petition at 14-18).  Petitioner acknowledges that appellate counsel challenged the St. Johns County court's jurisdiction to try Petitioner after having been adjudged incompetent in another circuit court. (<u>Id.</u> at 16).  However, he contends that appellate counsel should have raised due process claims under <u>Dusky</u> and <u>Pate</u> in addition to the issues that were raised.

Petitioner raised this issue in a state court petition for writ of habeas corpus (Ex. M), which was presented directly to the Fifth District Court of Appeal.  The appellate court summarily denied the petition.  (Ex. P).  Thus, there is a qualifying state court decision under AEDPA.  <u>See</u> <u>Harrington</u>, 131 S. Ct. at 784-85 (state court's summary denial of post-conviction claim still entitled to deference under 28 U.S.C. § 2254(d)(1)).  Upon a thorough review of the law and the record, this Court concludes that the state court's decision was not contrary to clearly established federal law, an unreasonable application thereof, or based on an unreasonable determination of the facts.

An ineffective assistance of appellate counsel claim is analyzed under the same two-prong framework announced in <u>Strickland</u>.  <u>Grubbs v. Singletary</u>, 120 F.3d 1174, 1176 (11th Cir. 1997).  "The test requires a defendant to show both that (1) appellate counsel's performance was deficient; and (2) the deficient performance prejudiced the defense."  <u>Id.</u> at 1176-77 (citing <u>Heath v. Jones</u>, 941 F.2d 1126, 1130 (11th Cir. 1991)).

This claim fails because, for the same reasons discussed in Ground II, each subclaim had little or no merit.  Moreover, appellate counsel <u>did</u> challenge the St. Johns County court's jurisdiction to try Petitioner after the Hillsborough County

35

court adjudicated him incompetent (Ex. F; Ex. H), and the appellate court rejected the argument on the merits, <u>Wardell I</u>, 944 So. 2d at 1091.  Thus, the record refutes Petitioner's claim that appellate counsel neglected all of the subclaims listed in this ground of the habeas petition.

To the extent Petitioner faults appellate counsel for not raising pure due process claims under <u>Dusky</u> and <u>Pate</u>, Petitioner was not prejudiced because such claims would not have had merit.  As mentioned earlier, the record reflects that the state court conducted a competency hearing on January 12, 2004, where it reviewed three experts' reports.  (<u>See</u> Ex. S, Vol. I at 101-05).  All three reports suggested that Petitioner was malingering, and Dr. Merwin's report expressly found him competent to proceed.  The court found that Petitioner was competent to stand trial, a finding that has a continuing presumption of correctness in later proceedings under Florida law.  <u>Durocher v. Singletary</u>, 623 So. 2d 482, 484 (Fla. 1993), <u>cert. dismissed</u>, —— U.S. ——, 114 S. Ct. 23 (1993).[37]  The trial court would only have been obligated to conduct a subsequent competency hearing had it become aware of facts creating reasonable cause to believe Petitioner was suffering from a mental defect that rendered him unable to understand the nature and consequences of the proceedings or to assist in his defense.  <u>See</u> <u>Pate</u>, 383 U.S. at 385; <u>accord</u> <u>Hunter v. State</u>, 660 So. 2d 244, 248 (Fla. 1995).  Petitioner points to no new developments between the January 2004

---

[37]    Such a presumption of competence is consistent with due process, provided that a state allows a defendant to prove his incompetence by a standard no more stringent than a preponderance of the evidence.  <u>Cooper v. Oklahoma</u>, 517 U.S. 348, 355 (1996) (citing <u>Medina v. California</u>, 505 U.S. 437, 449 (1992)).

competency determination and the beginning of trial that would have given the trial court reason to doubt its previous competency finding.  Petitioner points only to the reports of Drs. Gonzalez and Farzanegan, which, true enough, came to light only after the court found Petitioner competent in January 2004.  But, while the reports may have been discovered <u>after</u> the court found Petitioner competent, the underlying reports pre-dated the competency evaluations on which the court relied.  (<u>See</u> Ex. A, Vol. VII at 460-65).  Thus, they would not have compelled the trial court to conduct another competency hearing.  Moreover, upon discovery of the earlier reports, the trial court appointed yet another expert, Dr. Krop, to evaluate Petitioner's competency.

As such, there would have been questionable merit in arguing on direct appeal that Petitioner was tried while incompetent, contrary to <u>Dusky</u>, or that the trial court failed to hold a competency hearing, contrary to <u>Pate</u>.  Appellate counsel need not "raise all nonfrivolous issues on appeal," <u>Payne v. United States</u>, 566 F.3d 1276, 1277 (11th Cir.2009) (citation omitted), nor need counsel raise constitutional claims which (s)he believes to be of questionable merit, <u>Jackson v. Herring</u>, 42 F.3d 1350, 1359 (11th Cir.1995).  Because raising claims under <u>Dusky</u> and <u>Pate</u> would have been of questionable merit in light of the record here, this Court cannot say that appellate counsel's decision to raise the issues they did was objectively unreasonable. More pertinently, this Court cannot say that the state court's adjudication of this ineffective assistance claim was objectively unreasonable.  Accordingly, Petitioner is not entitled to relief on this ground.

### E. Ground Five

In Ground Five, Petitioner contends that the trial court denied him due process when it refused to appoint Dr. Gonzalez and Dr. Farzanegan to evaluate him for the purpose of determining his sanity at the time of the offense.  (Petition at 18). Petitioner contends that the state court's decision not to appoint Drs. Gonzalez and Farzanegan deprived him of the ability to present his only defense – insanity – contrary to Ake v. Oklahoma, 470 U.S. 68 (1985), and Chambers v. Mississippi, 410 U.S. 284 (1973).

Petitioner raised this issue on direct appeal.  (See Ex. F; Ex. H).  The Fifth District Court of Appeal summarily denied relief on the merits with a citation to Walls v. State, 926 So. 2d 1156 (Fla. 2006), a Florida Supreme Court decision.  Wardell I, 944 So. 2d at 1092.  Thus, there is a qualifying decision from the state court under AEDPA.  Upon a thorough review of the law and the record, this Court concludes that the state court's decision was not contrary to clearly established federal law, an unreasonable application thereof, or based on an unreasonable determination of the facts.

In Ake v. Oklahoma, the Supreme Court held that "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." 470 U.S. at 74.  Although the Supreme Court has not required states to "purchase for

the indigent defendant all the assistance that his wealthier counterpart might buy,"

id. (citing Ross v. Moffitt, 417 U.S. 600 (1974)), it has also

> reaffirmed that fundamental fairness entitles indigent defendants to
> "an adequate opportunity to present their claims fairly within the
> adversary system[.]" To implement this principle, we have focused on
> identifying the "basic tools of an adequate defense or appeal," and we
> have required that such tools be provided to those defendants who
> cannot afford to pay for them.

Ake, 470 U.S. at 77 (citations omitted).

Beyond its general holding, the Supreme Court did not articulate a more specific test governing when a trial court must appoint a psychiatric expert for an indigent defendant.   The Eleventh Circuit crystallized the Ake analysis by articulating a three-part test: (1) whether Petitioner made a timely request to the trial court for the provision of expert assistance; (2) whether it was "reasonable" for the trial court to deny Petitioner's request; and (3) whether the denial rendered Petitioner's trial fundamentally unfair.   Conklin v. Schofield, 366 F.3d 1191, 1206 (11th Cir. 2004) (citing Moore v. Kemp, 809 F.2d 702, 710 (11th Cir. 1987) (en banc)) (observing that the Supreme Court in Ake followed this three-part analysis). In determining the second prong, i.e., "the reasonableness of the trial court's refusal to provide independent expert assistance, [the Court] consider[s] only the facts available to the trial judge when he made a ruling on the particular motion." Conklin, 366 F.3d at 1208 (citing Moore, 809 F.2d at 710-13).   With respect to the third prong, i.e., whether the denial rendered Petitioner's trial fundamentally unfair, the Court asks "whether the Ake error 'had substantial and injurious effect or influence in

determining the jury's verdict.'" Conklin, 366 F.3d at 1206-07 (quoting Hicks v. Head, 333 F.3d 1280, 1286 (11th Cir. 2003).

In Walls v. State, the case cited by the state appellate court in deciding Petitioner's Ake claim, the Florida Supreme Court laid out a two-part test for determining whether a court erred in not authorizing funds for an indigent defendant to conduct a PET[38] scan: (1) whether the defendant established a particularized need for the test, i.e., whether the test was necessary for experts to make a more definitive determination about the defendant's asserted condition, and (2) whether the defendant was prejudiced by the denial of funds. Walls, 926 So. 2d at 1171. While this test is not specifically tailored to a request for psychiatric assistance, its general two-step framework, i.e., first, whether the defendant has established a particular need for expert assistance, and second, whether denying such assistance would prejudice the defendant, is not contrary to clearly established federal law as embodied in the holdings of the Supreme Court, including Ake. See Carey v. Musladin, 549 U.S. 70, 74 (2006) ("Clearly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision.). Notably, Ake did not provide a specific test for determining whether psychiatric assistance is constitutionally required beyond the general formulation that the Constitution requires such assistance "when a defendant has made a preliminary showing that his

---

[38]    "PET" stands for positron emission tomography, a type of scan that examines organ activity based on glucose metabolism.

sanity at the time of the offense is likely to be a significant factor at trial." 470 U.S. at 74. Thus, this Court cannot say that the Fifth District Court of Appeal identified the incorrect governing legal principle in confronting Petitioner's Ake claim.

Nor was the appellate court's decision an unreasonable application of Ake, or based on an unreasonable determination of the facts. The trial court in fact appointed four experts, asking each one not just to evaluate Petitioner's competency to stand trial, but also to assess his sanity at the time of the offense. (See Ex. A, Vol. I at 92-94 (order appointing Dr. Merwin and Dr. Olds to examine both Petitioner's competency and sanity), 110-12 (order appointing Dr. Risch to examine both Petitioner's competency and sanity), 147-50 (order appointing Dr. Krop to examine both Petitioner's competency and sanity)). Each of their reports were inconclusive as to Petitioner's sanity because Petitioner refused to cooperate (see Ex. S, Vol. I at 67-71, 73-74, 76-77; see also id. at 15-16 (quoting Dr. Krop's report)). The experts' reports are consistent with Petitioner's pattern of being intentionally uncooperative with his defense team. (See Ex. S., Vol. IV at 522, 528-29, 531).

Petitioner would find a violation of Ake in the trial court's refusal to appoint the psychiatrists of his choice, Drs. Farzanegan and Gonzalez. However, Ake forecloses finding a due process violation based on that fact alone. The Supreme Court explained that the indigent defendant does not have

> a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed, and as in the case of the provision of counsel we leave to the State the decision on how to implement this right."

<u>Ake</u>, 470 U.S. at 83.   Here, the state court afforded Petitioner access to four psychiatric experts – Drs. Merwin, Olds, Risch, and Krop – to evaluate his sanity at the time of the offense.   None could reach a conclusion as to Petitioner's sanity because he would not cooperate in the assessments.   Even one of Petitioner's requested experts, Dr. Farzanegan, could not reach a conclusion as to Petitioner's sanity at the time of the offense when he evaluated him in connection with the Hillsborough County case.   (<u>See</u> Ex. S, Vol. I at 50-52).   Thus, the trial court and the appellate court could reasonably have concluded, based on the information available at the time, that appointing further experts to evaluate Petitioner's sanity would have been an exercise in futility.   Accordingly, it was reasonable for the trial court to deny Petitioner's request to appoint Drs. Gonzalez and Farzanegan.   <u>See</u> <u>Conklin</u>, 366 F.3d at 1208.

Moreover, if Petitioner was disinclined to cooperate with his examiners, there is not a substantial likelihood that appointing Drs. Gonzalez and Farzanegan would have resulted in a more conclusive sanity evaluation.   As such, the trial court's decision not to appoint Drs. Gonzalez and Farzanegan did not render Petitioner's trial fundamentally unfair.   <u>See</u> <u>Conklin</u>, 366 F.3d at 1206.

Accordingly, the Fifth District Court of Appeal did not unreasonably deny Petitioner relief on his <u>Ake</u> claim, and he is not entitled to relief on this ground.

## VII.   Certificate of Appealability

This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller–El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will grant a certificate of appealability with respect to the following issues:

(1) Whether Petitioner's claim in Ground One that counsel was ineffective for failing to advise him of the twenty-five (25) year mandatory minimum sentence is procedurally barred from habeas review, and if not, whether Petitioner suffered from constitutionally ineffective assistance of counsel in not being so advised.

43

(2) Whether Petitioner's trial counsel rendered ineffective assistance in the competency hearing as alleged in Ground Two, subparts (d) through (f), and whether Petitioner was prejudiced as a result.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. #1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2. The **Clerk of the Court** shall enter judgment accordingly.

3. If Petitioner appeals this Order, the Court grants a certificate of appealability with respect to the issues set forth above.  In all other respects, a certificate of appealability is denied.

4. Because this Court has granted a certificate of appealability, Petitioner may proceed on appeal as a pauper.

5. The **Clerk of the Court** shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida this 29th day of September, 2015.

TIMOTHY J. CORRIGAN
United States District Judge

lc 19

Copies:

Pro se party
Counsel of record